J-S34041-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA EX. REL. MELANIE SUE MYERS | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| KYLE DAVEY CRIBBS A.K.A. CHARLOTTE REYNN CRIBBS | : | No. 150 WDA 2019 |
| | : | |
| Appellant | | |

Appeal from the Order Entered July 30, 2018
In the Court of Common Pleas of Jefferson County Civil Division at No(s):
588-2010 CD

BEFORE:   DUBOW, J., McLAUGHLIN, J., and COLINS*, J.

MEMORANDUM BY COLINS, J.:                    **FILED AUGUST 23, 2019**

Appellant, Kyle Davey Cribbs, also known as Charlotte Reynn Cribbs, *pro se*, appeals from the order of the Civil Division of the Court of Common Pleas of Jefferson County, entered July 30, 2018, that denied her "Petition for Writ of Error *Coram Nobis*."  We affirm.

On June 15, 2010, at the current civil docket number, No. 2010-00588 ("No. 10-588"), Appellant's mother, Melanie Sue Myers, filed a petition for an order against Appellant pursuant to the Protection from Abuse Act ("PFA").[1] The Petition for Protection from Abuse ("PFA Petition") stated:  "Due to [Appellant] being a minor child[2] and Melanie Myers, having primary custody

---

[1] 23 Pa.C.S. §§ 6101-6122.

[2] Appellant's date of birth is May 23, 1994.

*   Retired Senior Judge assigned to the Superior Court.

of the minor child, [Appellant]'s father, William L. Cribbs will be [Appellant]'s guardian in this matter." PFA Petition at ¶ 14.f. Nothing in the certified record indicates that Mr. Cribbs received notice of the PFA Petition or of Myers's request that he serve as Appellant's guardian at the final PFA hearing. The trial court granted a temporary PFA order later that same day.

On June 25, 2010, following a hearing, the trial court entered a final PFA order. Myers had "appeared personally" at the hearing. Final PFA Order, 6/25/2010. Appellant, who was 16 years old at the time, "though properly served, failed to appear" at the hearing. *Id.* There is no record of an attorney, guardian, or other advocate appearing at the hearing on Appellant's behalf, and nothing in the certified record indicates that Mr. Cribbs was given notice of the hearing. No motion for reconsideration or notice of appeal was filed from the final PFA order.

On January 14, 2011, pursuant to a request from Myers,[3] the trial court entered an amended final PFA order, allowing Appellant "to have phone and face to face contact with [Myers] for the sole purpose of participating in treatment plans and family counseling." Amended Final PFA Order,

_____

[3] The amended PFA order states that "Plaintiff's request for an amended final protection order is granted[,]" Amended Final PFA Order, 1/14/2011, but no written petition for amendment or modification of the final PFA order appears in the certified record. The amended final PFA order additionally states that Myers "appeared personally" but makes no mention of whether Appellant appeared or if he had been served with notice of the hearing. *Id.* Yet, Appellant makes no claim that she lacked notice of the amended final PFA order.

1/14/2011, at ¶ 5.[4]  Appellant was still 16 years old at the time of the amended final PFA order hearing, and, again, there is no record of an attorney, guardian, or other advocate appearing at the hearing on Appellant's behalf. No motion for reconsideration or notice of appeal was filed from the amended final PFA order.

On July 15, 2011, counsel for Myers sent a letter to the trial court asking to "have the Protective Order dismissed."  Letter from J.D. Ryan, Esquire, to the Honorable John H. Foradora (July 15, 2011).  According to the letter:  "At the time the Order was requested, Ms. Myers felt it was proper and necessary. She indicated to me that she late learned that there were issues she was unaware of that caused problems between her and [Appellant]" and "no longer feels this Order is necessary" as she "is no longer in fear of abuse." **_Id._**

On July 19, 2011, the trial court entered an "Order to Vacate," stating: "upon Plaintiff's motion to withdraw or discontinue this action, **1.** This matter is withdrawn without prejudice. **2.** . . . All costs have been paid. **3.** The **Final Order (filed on Jan 14, 2011)** is hereby vacated."  Order to Vacate, 7/19/2011 (emphasis in original).

On March 19, 2014, at Docket Number CP-33-CR-0000624-2013 ("No. 624"), Appellant pleaded guilty to manufacture, delivery, or possession

---

[4] Neither the final PFA order in 2010 nor the amended final PFA order in 2011 explicitly stated that the temporary PFA order was vacated or voided.

with intent to manufacture or deliver a controlled substance ("PWID")[5] and was sentenced to eight to sixteen months of confinement followed by twenty months of probation. On August 3, 2016, Appellant was found to have violated her supervision and was sentenced to three years of probation.

Also on March 19, 2014, at Docket Number CP-33-CR-0000626-2013 ("No. 626"), Appellant pleaded guilty to an additional count of PWID[6] and was sentenced to eight to sixteen months of confinement followed by twenty months of probation, to be served consecutively to her sentence at No. 624. On August 3, 2016, Appellant was found to have violated her supervision and was sentenced to three years of probation, concurrent to her probationary sentence at No. 624.[7]

On January 3, 2018, after another allegation that Appellant had again violated her supervision at both No. 624 and No. 626, Appellant appeared for a *Gagnon I*[8] hearing with counsel present, during which she waived her right to said hearing. Notice of *Gagnon I* Hearing, 12/28/2017; *Gagnon* Order, 1/4/2018.

_____

[5] 35 P.S. § 780-113(a)(30).

[6] *Id.*

[7] In addition to the certified record for No. 10-588, we also received the full certified records for both No. 624 and No. 626 for our consideration during this appeal.

[8] *Gagnon v. Scarpelli*, 411 U.S. 778 (1973) (discussing revocation hearings).

That same day, at Docket Number CP-33-CR-0000540-2017 ("No. 540-17"), Appellant pleaded guilty to endangering welfare of children and simple assault.[9] She was sentenced to an aggregate judgment of sentence of six months and one day to four years of confinement.[10]

On January 17, 2018, the trial court held a **Gagnon II**[11] violation of probation ("VOP") hearing for No. 624 and No. 626. During that hearing, the VOP court stated:

> And as I pointed out at your sentencing a couple of weeks ago,[12] you've got this simple assault against the [biological] mother of your children[, A.S.W.]. She has a PFA against you. Your father has a PFA against you. . . . I think there were seven times that, through collect calls, you and [A.S.W.] had contact in violation of the PFA in which she indicated you would have to call collect. You also attempted to call her a number of other times and also your father, who has a PFA. . . .
>
> And I think, because of this type of assaultive behavior and threatening behavior, getting PFA's from your family members, from the people you love, that it shows you could and are potentially dangerous to individuals, especially those closest to you.

_____

[9] 18 Pa.C.S. §§ 4304(a)(1) and 2701(a)(1), respectively.

[10] Appellant's appeal from this judgment of sentence was quashed by this Court. **Commonwealth v. Cribbs**, No. 1243 WDA 2018, unpublished judgment order at 1 (Pa. Super. August 15, 2019).

[11] The notes of testimony are improperly labelled as a "Gagnon One Hearing." N.T., 1/17/2018, at 1.

[12] The bench of the Jefferson County Court of Common Pleas consists of only one judge, the Honorable John H. Foradora, who oversaw all of Appellant's aforementioned final PFA, plea, sentencing, and **Gagnon**/VOP hearings.

N.T., No. 624 and No. 626, 1/17/2018, at 5-6.  Appellant was sentenced to an aggregate term of 10 to 20 years of confinement, to be served consecutively to her sentence at No. 540-17.  **Id.** at 7.  Following the denial of her motion for reconsideration, Appellant appealed to this Court.[13]  Her appellate counsel filed a petition to withdraw and an **Anders**[14] brief challenging the discretionary aspects of her sentence, and, on May 7, 2019, this Court affirmed her judgment of sentence and granted counsel's petition to withdraw.  **Commonwealth v. Cribbs**, No. 278 WDA 2018, unpublished memorandum (Pa. Super. filed May 7, 2019) (panel reconsideration granted, July 8, 2019).

On July 20, 2018, at No. 10-588, Appellant filed a Petition for Writ of Error *Coram Nobis* ("*Coram Nobis* Petition").  The petition pleaded as follows:

11.) [Appellant] signed the acknowledgment of service of Original Process [of the PFA Petition], absent the presence of an Adult or Legal Guardian.

12.)  A Hearing was scheduled for sometime after before this Court.

13.)  [Appellant] was not able to attend this Hearing because, at the time, [Appellant] had no legal guardian, or even an adult, to care for [Appellant].  [Appellant] had no means or resources of adequate transportation at the age of sixteen (16). . . .

---

[13] Appellant's combined appeal of No. 624 and No. 626 pre-dated **Commonwealth v. Walker**, 185 A.3d 969 (Pa. 2018).  **See Commonwealth v. Cribbs**, No. 278 WDA 2018, unpublished memorandum at 3 n.4 (Pa. Super. filed May 7, 2019).

[14] **Anders v. California**, 386 U.S. 738 (1967).

16.) Consequently, a Judgment by Default was entered against [Appellant], for failing to appear, in favor of the Plaintiff, Melanie Sue Myers for a three (3) year [PFA] Order.

17.) Shortly thereafter, [Appellant] violated the aforemention[ed PFA] Order and was held in Indirect Criminal Contempt of Court by th[e trial c]ourt.

*Coram Nobis* Petition at ¶¶ 11-13, 16-17. Appellant then requested that "the Temporary [PFA] Order and Final Order of [PFA] must be deemed voidable."

***Id.*** at ¶ 29.

On July 30, 2018, the trial court denied the *Coram Nobis* Petition. In its order, the trial court asserted:

The [trial c]ourt would note . . . that no record of an indirect criminal contempt related to this case appears in CPCMS (Civil Pleas Case Management System), only one related to the matter in which [A.S.W.] was the plaintiff, which stands as further evidence that petitioner believes errantly that the above-captioned matter has any negative effect on [her] circumstances.

Order, 7/30/2018.

On August 6, 2018, Appellant filed this timely appeal.[15] The trial court entered its opinion on December 5, 2018, in which it acknowledged that "it did in fact find [Appellant] in contempt for violating the terms of the PFA order entered at this docket number." Trial Court Opinion, filed December 5, 2018, at n.1. However, this correction did not change the trial court's ultimate decision denying the *Coram Nobis* Petition.

Appellant now presents the following issues for our review:

---

[15] Appellant filed her statement of errors complained of on appeal on November 21, 2018.

A.     Whether the [trial] court erred by concluding that the Appellant was not held in indirect criminal contempt of court when the Appellant was indeed held in indirect criminal contempt as a juvenile delinquent and placed under a consent decree?[]

[B.]   Whether the Commonwealth is properly named as a respondent to this case?[]

[C.]   Whether this pro se application on direct appeal is a question of extraordinary circumstance and the law?[]

[D.]   Whether the [trial] court erred by concluding that the Appellant does not still suffer the prejudice of the invalid [PFA order] when the [trial] court considered said order upon the record?[]

Appellant's Brief at 1-2 (issues re-ordered to facilitate disposition; unnecessary capitalization omitted).

Preliminarily, we must discuss whether the trial court had authority to address any challenges to the orders entered in No. 10-588. If the orders were not in effect at the time that Appellant filed her *Coram Nobis* Petition, then said petition would be moot.

We first note that the Order to Vacate only explicitly states that the "**Order (filed on Jan 14, 2011)** is hereby vacated." Order to Vacate, 7/19/2011 (emphasis in original). The Order to Vacate does not clearly mention that the final PFA order dated June 25, 2010, was also vacated. Nevertheless, the Order to Vacate also states: "This matter is withdrawn without prejudice." *Id.* This sentence implies that all entries in this action were withdrawn, which would include the final PFA order dated June 25, 2010.

Even assuming the trial court intended the Order to vacate both the June 2010 final PFA order and the January 2011 amended final PFA order, we

- 8 -

must consider whether the trial court had jurisdiction to vacate these orders at the time it entered the Order to Vacate. Pursuant to **Commonwealth v. Charnik**, 921 A.2d 1214 (Pa. Super. 2007), we conclude that the trial court had no jurisdiction by July 2011 to vacate either the June 2010 final PFA order or the January 2011 amended final PFA order. The facts of **Charnik** are as follows:

> Janine H. Charnik (Wife) filed a PFA petition against Charnik on November 17, 2004. On December 14, 2004, following a hearing, Judge Mark E. Mascara granted Wife's petition and entered a final PFA order excluding Charnik from the marital residence. . . . On July 22, 2005, Wife filed a petition to withdraw the PFA order. The trial court, on that date, entered an order setting aside the final PFA order that it had entered seven months prior.

**Id.** at 1215-16. This Court then explained:

> A *petition* may be withdrawn; a final order, however, requires a judicial act to be set aside or vacated. Although the trial court entered an order setting aside the final PFA order, it had no jurisdiction to do so. **See** footnote 3 . . .
>
> > [3] The PFA order entered on December 14, 2005 was a final order, from which no motion to reconsider or appeal was filed. The trial court, therefore, had no jurisdiction to set aside that order seven months later. **See** Pa.R.C.P.1901.7(b); Pa.R.C.P.1930.2(a); **see also** Pa.R.C.P.1901 *et seq.* (proceedings pursuant to the PFA are governed by the Rules of Civil Procedure). Once a final order or judgment is entered, an appeal must be filed within 30 days, or the trial court must expressly grant reconsideration within 30 days. If either of these two events does not occur, the judgment is final. Absent extraordinary cause, the order is not subject to collateral attack. . . . This did not occur here. . . . There is no intervening motion to reconsider or notice of appeal. Charnik makes no claim here that he had no notice of the final PFA order. We conclude, then, that the trial court had no authority to withdraw the PFA order.

- 9 -

*Id.* at 1217 & 1218 n.3 (emphasis in original). This Court further observed: "We note, too, that the facts of this case illustrate a typical sequence in an abusive relationship; the abuse, the remorse, the forgiveness, and the repetition of that cycle." *Id.* at 1221.

The procedural history of the current action is analogous to *Charnik*'s. The trial court entered the final PFA order on June 25, 2010, and an amended final PFA order on January 14, 2011.[16] *Compare* Final PFA Order, 6/25/2010, *and* Amended Final PFA Order, 1/14/2011, *with Charnik*, 921 A.2d at 1215-16. No motion for reconsideration or notice of appeal was filed within 30 days of the entry of either order. *See Charnik*, 921 A.2d at 1218 n.3. There is no suggestion in the certified record that Appellant had no notice of the final PFA order or the amended final PFA order. *See id.* Following a request by the petitioner, Myers, to withdraw said PFA order, the trial court vacated the amended Final PFA order and withdrew the entire matter on July 19, 2011 – more than one year after the 2010 final PFA order and over six months after the amended final PFA order. *Compare* Letter from J.D. Ryan, Esquire, to the Honorable John H. Foradora (July 15, 2011) *and* Order to Vacate, 7/19/2011, *with Charnik*, 921 A.2d 1215-17 & 1218 n.3. Hence, as in *Charnik*, 921 A.2d at 1217 & 1218 n.3, the trial court had no jurisdiction to

---

[16] We need not reach the question of whether the trial court had authority to enter the amended final PFA order, as it does not affect our analysis pursuant to *Charnik*.

enter the Order to Vacate more than 30 days after the entry of either PFA order.  For this reason, the Order to Vacate was improperly entered, and the trial court had the authority to address a challenge to this final PFA order. *See id.* at 1218 n.3.  The *Coram Nobis* Petition therefore was not moot, and we may address Appellant's substantive issues raised on appeal.

Nonetheless, we perceive that Appellant's first issue raised on appeal is moot, now that the trial court corrected the procedural history in its opinion.  Trial Court Opinion, filed December 5, 2018, at n.1.  Additionally, whether the Commonwealth was properly named as the respondent in this case is immaterial, because the Commonwealth has elected not to file a brief to this Court.  Letter from Jeffrey D. Burkett, Esquire, District Attorney of Jefferson County, to Nicholas Corsetti, Esquire (May 22, 2019).

Appellant's remaining issues concern the denial of her *Coram Nobis* Petition.

> The term "coram nobis" is defined as "in our presence" or "before us," and "[t]he essence of coram nobis is that it is addressed to the very court which renders the judgment in which injustice is alleged to have been done, in contrast to appeals or review directed to another court...." Black's Law Dictionary 304-05 (5th ed. 1979).  In 1945 this Court explained the nature of the writ as follows:
>
> > The writ of error coram nobis is an ancient common law writ, the purpose of which is to bring before a court a judgment previously rendered by it for review or modification, on account of *some error of fact* . . . affecting the validity and regularity of the proceedings, and which was not brought into the issue at the trial thereof.
>
> ***Commonwealth v. Morrison***, 158 Pa.Super. 311, 313, 44 A.2d 850, 851 (1945) (citation omitted; emphasis added).  This Court

- 11 -

suggested that the writ would lie, for example, where the error concerned the status of a party, such as an infant, or where an accused was forced to plead guilty owing to a well-founded fear of mob violence. *Id.* . . . The writ of error coram nobis is generally regarded as an extraordinary remedy.

*Commonwealth v. Fiore*, 665 A.2d 1185, 1189-90 (Pa. Super. 1995).

Appellant improperly filed her *Coram Nobis* Petition at the instant docket number, No. 10-588. A writ of *coram nobis* was a remedy for criminal cases, and Appellant has filed the instant petition in a civil matter.

Assuming Appellant had filed the *Coram Nobis* Petition pursuant to No. 624 and No. 626, her petition would still have been properly denied, because "the granting of a petition for [writ of error coram nobis] is not proper unless the extrinsic facts were not only not discovered at the time of trial, but also not discoverable by the petitioner at such time by the exercise of due diligence." *Commonwealth v. Mangini*, 386 A.2d 482, 490 (Pa. 1978). The procedural history of No. 10-588 was known to Appellant at the time of her VOP hearings, and Appellant could have informed the VOP court of any necessary corrections to the history of PFA orders against her during her VOP sentencing hearing, in her motion for reconsideration, or as part of her direct appeal of No. 624 and No. 626. A fact known to Appellant was obviously discovered and discoverable by her, and the granting of her *Coram Nobis* Petition thus would have been improper. *See id.*[17]

_____

[17] All that being said, nothing in the record indicates that the VOP court actually considered the record from No. 10-588, including the PFA orders therein, when sentencing Appellant; instead, the record shows that the VOP

For the reasons given above, all of the challenges raised by Appellant on appeal are meritless, and we affirm the order denying Appellant's *Coram Nobis* Petition.[18]

Order affirmed.

Judge Dubow Concurs in the Result.

Judge McLaughlin Concurs in the Result.

---

court only considered the PFA orders protecting A.S.W. and Mr. Cribbs.  N.T., No. 624 and No. 626, 1/17/2018, at 5-6; *see Mangini*, 386 A.2d at 490 ("A writ of error coram nobis['s] . . . function is to bring before the court rendering the judgment matters of fact which if known at the time the judgment was rendered, would have prevented its rendition.").

[18] To the extent that the existing record at No. 10-588 could potentially prejudice Appellant in future proceedings, *see* Appellant's Brief at 15-21, nothing in this decision precludes her from filing a motion to void all the PFA orders from No. 10-588 pursuant to *Varner v. Holley*, 854 A.2d 520, 523-24 (Pa. Super. 2004) ("when a minor is a party to a civil action, . . . [the] minor shall be represented by a guardian who shall supervise and control the conduct of the action in behalf of the minor"; accordingly, a "PFA order is **voidable**" where the respondent "was a minor unrepresented by a guardian" (emphasis added)).  *See also Linde v. Linde Enterprises, Inc.*, 118 A.3d 422, 431–32 (Pa. Super. 2015) (distinction between a "void" and a "voidable" action); *Oswald v. WB Public Square Associates, LLC*, 80 A.3d 790, 797 (Pa. Super. 2013) ("clear distinction between judgments which are simply 'voidable' based upon mere irregularities and those which are 'void *ab initio*'"); *Graziani v. Randolph*, 887 A.2d 1244, 1251–52 (Pa. Super. 2005) (Klein, J., concurring) (explaining confusion between terms "void" and "voidable").

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/23/2019