J. S14008/16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| GEORGE JOSHUA HALLEY, | : | No. 1167 MDA 2015 |
| | : | |
| Appellant | : | |

Appeal from the Order Entered June 22, 2015,
in the Court of Common Pleas of Schuylkill County
Criminal Division at No. CP-54-CR-0001095-2012

BEFORE:  FORD ELLIOTT, P.J.E., PANELLA, J., AND STEVENS, P.J.E.*

MEMORANDUM BY FORD ELLIOTT, P.J.E.:          **FILED MAY 05, 2016**

George Joshua Halley appeals from the June 22, 2015 order that dismissed his petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546, following his convictions for possession with intent to deliver ("PWID") and possession of drug paraphernalia.[1]

On April 28, 2012, appellant was originally charged by the Pottsville Bureau of Police with one count each of PWID (cocaine), possession of a controlled substance (cocaine), and possession of drug paraphernalia.

---

* Former Justice specially assigned to the Superior Court.

[1] 35 P.S. § 780-113(a)(30) and 35 P.S. § 780-113(a)(32), respectively.

On August 16, 2013, appellant submitted a general plea to the charges. He later moved to withdraw the plea which the Court of Common Pleas of Schuylkill County granted on December 12, 2013. On January 30, 2014, appellant entered another general plea. When appellant appeared before the trial court, the trial court asked him the following question: "So you understand that it's possible, and perhaps in some cases likely, that you would risk deportation as a result of your conviction. Do you understand that?" (Notes of testimony, 1/30/14 at 4.) Appellant replied, "Yes, sir." (*Id.* at 5.) The trial court accepted the guilty plea. (*Id.* at 8.) On April 1, 2014, appellant was sentenced to an aggregate term of 9 to 23½ months on the possession with intent to deliver and the possession of drug paraphernalia.[2]

On March 19, 2015, appellant moved for relief pursuant to the PCRA.[3] Appellant alleged that he was eligible for relief in the form of a new trial primarily due to ineffective assistance of counsel. Specifically, appellant alleged:

> My Public Defender Ms. Andrea Thompson knew I was not a U.S. citizen and only a lawful permanent resident – Ms. Thompson advised me that she had asked someone and my plea of guilty to possession with intent to distribute crack cocaine would not lead to my deportation because I have a U.S. citizen child. This is the reason I pled guilty.

---

[2] The possession of a controlled substance merged with the PWID.

[3] No direct appeal was filed.

> . . . .
> My conviction for Possession with Intent to Distribute
> . . . rendered me removable from the United States
> with no form of relief available. I am not a US
> Citizen and am only a lawful permanent resident. I
> was informed of this while in immigration custody by
> my immigration attorney.
>
> . . . .
> Ms. Thompson provided ineffective assistance of
> counsel by not properly advising me on the
> immigration consequences of my plea violating my
> 6th Amendment right to effective assistance of
> counsel.

Motion for post conviction collateral relief, 3/19/15 at 3 (citation omitted).[4]

The PCRA court conducted a hearing on June 22, 2015. Appellant testified that he became aware of the risk of deportation when he read the plea colloquy. He explained that he had lived in the United States for approximately 20 years with permanent resident status. (Notes of testimony, 6/22/15 at 5.) He testified that when he first asked his attorney, Andrea Thompson ("Attorney Thompson"), about whether a conviction would lead to deportation, she responded that "she wasn't aware and she was going to find out from somebody." (*Id.* at 6.) As a result of this uncertainty, appellant withdrew his initial plea. (*Id.*) Appellant reported that Attorney Thompson subsequently told him that:

> she spoke to somebody and the person told her as
> long as I have a US citizen daughter, I would not be
> deported. I would be detained in ICE [United States
> Immigration and Customs Enforcement] in York

---

[4] Jeffrey M. Markosky, Esquire was appointed counsel for appellant.

> County and then they would release me because I
> have a US citizen daughter.

*Id.* at 7. According to appellant, Attorney Thompson did not tell appellant with whom she consulted. Appellant reported that he was satisfied with this advice. (*Id.*) Appellant then entered his guilty plea. He became aware that he would be deported when the United States Immigration and Customs Enforcement detained him and he learned that he was subject to mandatory deportation based on his conviction. (*Id.* at 8.) Appellant explained that if he had known that his conviction would lead to mandatory deportation, he would not have submitted a guilty plea and would have taken his "chances at trial." (*Id.* at 9.) When the PCRA court questioned him as to why he submitted the plea when the trial court asked him if he understood that deportation was a possibility and he answered that he did, appellant stated, "Miss Andrea Thompson assured me that it was just a standard warning and that because I have a US citizen daughter I believe that I wouldn't have been deported." (*Id.* at 9-10.) On cross-examination, appellant admitted that through Attorney Thompson he tried to negotiate with the Commonwealth to drop the felony charge so that he would not be deported and that he withdrew the initial plea because he feared deportation. (*Id.* at 10-11.) He reiterated that Attorney Thompson told him that he would "absolutely" not be deported. (*Id.* at 11.)

Matthew Archambeault ("Attorney Archambeault"), appellant's immigration attorney, testified that a conviction for possession with intent to

distribute crack cocaine resulted in mandatory deportation unless the convicted individual could prove that his home country would torture him upon his return. (*Id.* at 13-14.) After he initially met with appellant and appellant told him his situation and what Attorney Thompson allegedly told him, Attorney Archambeault testified that he sent a letter[5] to Attorney Thompson which outlined what appellant told him; specifically, that Attorney Thompson told him that he would not be deported because he had a minor child who was a United States citizen. Attorney Archambeault testified that shortly after he mailed the letter, Attorney Thompson telephoned him and stated, "Look, that's exactly what happened. I got your letter. It's exactly what happened. I feel really bad about it and . . . she said I don't know anything about immigration law and she expressed regret about her advice." (*Id.* at 15.)

Shenaya Johnson ("Johnson"), appellant's girlfriend and the mother of his child, testified that appellant asked Attorney Thompson at the courthouse before they went into a meeting if there were a chance of appellant getting deported. Attorney Thompson replied, "no because you have a daughter in the U[.]S." (*Id.* at 20.)

Attorney Thompson testified regarding her representation of appellant. Regarding advice she gave appellant concerning the possibility of deportation, Attorney Thompson testified:

---

[5] This letter is not part of the record before this court.

> I recall having discussions about his immigration status and whether the felonies would cause a deportation and I didn't know immigration law very well. But I remember having conversations. I do recall telling him that he should speak to an immigration lawyer to get the best advice possible. I don't recall ever telling him any guarantees on anything. We had a conversation about the potential of deportation. That he could be deported based on the felony and my recollection is, based on my previous experience, that he may have had an appeal issue or may have been able to argue to stay based on the fact that he had a daughter that was born in the United States and if my memory serves, his daughter had like just been born within that year that this case was going on, she was a baby. She was just a few months or weeks old at the time that we were having these discussions.

*Id.* at 25-26.

Attorney Thompson testified that she advised appellant to consult an immigration attorney and that she did not recall whether Johnson was present when she made that recommendation. (*Id.* at 26-27.) She denied that she ever told Attorney Archambeault that she had told appellant that he would not be deported. (*Id.* at 27.) On cross-examination, Attorney Thompson admitted that she did not believe that she consulted an immigration attorney with respect to appellant. She admitted that she attempted to get the felony charge of PWID dropped in part because of deportation issues. (*Id.* at 30-31.)

By order dated June 22, 2015, the PCRA court denied the petition for post-conviction relief. The PCRA court determined:

When [appellant] entered his Plea on Possession With Intent to Deliver it was before this member of the Court on January 30, 2014. He was specifically informed by the Court that "Deportation is a collateral consequence if you are a non-citizen of the United States." . . . . Moreover, [appellant] informed the Court that he was a non-citizen and was told that, "that you risk deportation" after which he testified that he understood this. . . .

The Court finds attorney Thompson's testimony to be credible and rejects [appellant's], Ms. Johnson/s [sic] and attorney Archambeault's to the contrary as not credible. (It is noted that the letter forming the basis of attorney Archambeault's testimony was never produced.)

It is apparent that [appellant] was aware of the deportation consequences of his guilty plea in 2013. It was the reason he withdrew his original plea. Moreover, he was informed by the Court about deportation consequences at the time he entered his guilty plea. In **Padilla v. Kentucky**, 559 U.S. 356 (2010), the U.S. Supreme Court reversed a conviction and remanded the case where a defendant was not informed of the deportation consequence of his guilty plea by his Public Defender attorney. However, Justice Alito and Chief Justice Roberts concurred with the majority only because in that case Defendant's attorney had misled him regarding the deportation consequences of a conviction. The concurring Justices' [sic] indicated that defendant's Criminal Public Defender must advise defendant that a criminal conviction may have adverse immigration consequences and that if the alien wants advice on this issue, the alien should consult an attorney. Moreover, in this case the [appellant] was advised by the Court of the deportation consequences of his plea at the time it was entered and subsequent to the time of his discussion with this attorney regarding deportation consequences.

In this case [appellant] had been advised of the deportation risk by attorney Thompson and the Court, yet entered the plea nonetheless. He was advised to seek the services of an immigration attorney prior to entering the plea, but choose [sic] not to do so until after the U.S. Immigration Agency detained him. For this Court to find now that [appellant] did not understand the deportation consequences of his plea would fly in the face of the record made of proceedings before the Court especially at the time of his latest plea. Such a holding would render meaningless the colloquy which courts' [sic] are required to conduct.

PCRA court opinion, 6/22/15 at 2-3 (citations omitted).

Appellant raises the following issue on appeal:

Whether the Appellant should have been allowed to withdraw his guilty pleas after sentencing due to the fact that he was given incorrect legal advice by his attorney regarding the collateral consequences of deportation, and then entered the guilty plea based upon this incorrect advice with the result being mandatory deportation?

Appellant's brief at 5.

PCRA petitions are subject to the following standard of review:

"[A]s a general proposition, we review a denial of PCRA relief to determine whether the findings of the PCRA court are supported by the record and free of legal error." **Commonwealth v. Dennis**, 609 Pa. 442, 17 A.3d 297, 301 (Pa. 2011) (citation omitted). A PCRA court's credibility findings are to be accorded great deference, and where supported by the record, such determinations are binding on a reviewing court. **Id.** at 305 (citations omitted). To obtain PCRA relief, appellant must plead and prove by a preponderance of the evidence: (1) his conviction or sentence resulted from one or more of the errors enumerated in 42 Pa.C.S. § 9543(a)(2); (2) his claims have not been previously litigated or waived,

- 8 -

*id.* § 9543(a)(3); and (3) "the failure to litigate the issue prior to or during trial . . . or on direct appeal could not have been the result of any rational, strategic or tactical decision by counsel[.]" ***Id.*** § 9543(a)(4). An issue is previously litigated if "the highest appellate court in which [appellant] could have had review as a matter of right has ruled on the merits of the issue[.]" ***Id.*** § 9544(a)(2). "[A]n issue is waived if [appellant] could have raised it but failed to so before trial, at trial, . . . on appeal or in a prior state postconviction proceeding." ***Id.*** § 9544(b).

***Commonwealth v. Treiber***, 121 A.3d 435, 444 (Pa. 2015).

The PCRA also permits relief when a conviction is the result of "ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process, that no reliable adjudication of guilt or innocence could have taken place." ***Id.*** at § 9543(a)(2)(ii). For cases in which a claim of trial error is being raised under the guise of an ineffective assistance of counsel claim, this court has issued the following warning:

> PCRA claims are not merely direct appeal claims that are made at a later stage of the proceedings, cloaked in a boilerplate assertion of counsel's ineffectiveness. In essence, they are extraordinary assertions that the system broke down. To establish claims of constitutional error or ineffectiveness of counsel, the petitioner must plead and prove by a preponderance of evidence that the system failed (***i.e.***, for an ineffectiveness or constitutional error claim, that in the circumstances of his case, including the facts established at trial, guilt or innocence could not have been adjudicated reliably), that his claim has not been previously litigated or waived, and where a claim was not raised at an earlier stage of the proceedings, that counsel could not have had a

> rational strategic or tactical reason for failing to litigate these claims earlier.

*Commonwealth v. Rivers*, 786 A.2d 923, 929 (Pa. 2001).

In *Padilla v. Kentucky,* 569 U.S. 356 (2010), the United States Supreme Court held that Jose Padilla, who was convicted on various drug-related charges, was denied effective assistance of counsel when counsel failed to inform him that a guilty plea made him subject to mandatory deportation.

In *Commonwealth v. Ghisoiu*, 63 A.3d 1272 (Pa.Super. 2013), this court determined that in a situation where an attorney advised his client that a plea could have immigration consequences and advised him to consult an immigration attorney, the attorney's assistance was not ineffective.

Here, appellant argues that he received ineffective assistance of counsel because Attorney Thompson advised him that he would not be deported if he were convicted of PWID crack cocaine because he had a minor child who was a United States citizen. As a result, appellant entered a guilty plea. He argues that he should have been informed that when he entered a guilty plea, deportation was a certainty and not a possibility.

Appellant's argument is flawed. He argues his version of the facts rather than the facts found by the PCRA court, the fact-finder. The PCRA court found Attorney Thompson credibly testified that she advised appellant to get advice from an immigration attorney and only stated that it was a possibility that the fact that he had a minor child who was a United States

citizen might preclude deportation. Appellant also ignores the fact that he was informed by the trial court that he risked deportation if he were convicted. The PCRA court found that appellant was warned of the immigration consequences of his plea and was advised to consult with an immigration attorney. The trial court's questioning of appellant and Attorney Thompson's testimony support these findings. The PCRA court is the fact-finder and when supported by the record are binding on the reviewing court. ***Commonwealth v. Dennis***, 17 A.3d 297 (Pa. 2011). Similar to ***Ghisoiu***, appellant was advised that there could be deportation consequences with a conviction. The PCRA court did not err when it determined that appellant's claim of ineffective assistance of counsel was without merit.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/5/2016

- 11 -